1

2

3

4

5

6          **UNITED STATES DISTRICT COURT**
           **DISTRICT OF NEVADA**

7

ALEXANDER OCASIO,                    )          3:09-CV-400-ECR (RAM)
8                                    )
           Plaintiff,                )          **REPORT AND RECOMMENDATION**
9                                    )          **OF U.S. MAGISTRATE JUDGE**
           vs.                       )
10                                   )
C/O SAUNDERS, et al.,                )
11                                   )
           Defendants.               )
12 _____  )

13          This Report and Recommendation is made to  the Honorable Edward C. Reed, Jr.,

14 Senior United States District Judge.  The action was referred to the undersigned Magistrate

15 Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before

16 the court is Defendants' Motion to Dismiss. (Doc. #11.)[1] Plaintiff has opposed (Doc. #27), and

17 Defendants have replied (Doc. #38).  After a thorough review, the court recommends that the

18 motion be granted.

19                              **I. BACKGROUND**

20          At all relevant times, Plaintiff Alexander Ocasio was in custody of the Nevada

21 Department of Corrections (NDOC) as an inmate at Ely State Prison (ESP).  (Pl.'s Compl. 1

22 (Doc. #4).)  Plaintiff, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983.

23 Defendants are various NDOC corrections officers.  (*Id*. at 2-3.)  Plaintiff seeks monetary,

24 injunctive, and declaratory relief against Defendants in their individual capacities. (*Id*. 2-3, 13.)

25          In Count I, Plaintiff claims that on July 11, 2009, Defendant Saunders and Defendant

26 Smit used excessive force and inflicted cruel and unusual punishment in violation of the Eighth

27

28          [1] Refers to court's docket number.

1 Amendment by placing him in handcuffs and leg shackles for three hours outside without

2 water.  Plaintiff also alleges that Defendants refused to provide him food later that day.  (Pl.'s

3 Compl. 5.)

4          In Count II, Plaintiff alleges that Defendant Carasco and Defendant Smit inflicted cruel

5 and unusual punishment in violation of the Eighth Amendment by refusing to deliver him

6 breakfast and lunch on July 12, 2009.  (*Id.* at 6.)

7          In Count III, Plaintiff alleges that on July 12, 2009, various Defendants used excessive

8 force and inflicted cruel and unusual punishment in violation of the Eighth Amendment by

9 placing him in handcuffs, taking him to the shower, and attacking him.  (*Id.* at 7-10.)

10          Defendants move to dismiss because Plaintiff has failed to exhaust the available

11 administrative remedies.  (Defs.' Mot. to Dimiss 2 (Doc. #11).)

12                           **II. ADMINISTRATIVE EXHAUSTION**

13 **A.   LEGAL STANDARD**

14          The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought

15 with respect to prison conditions under section 1983 of this title, or any other Federal law, by

16 a prisoner confined in any jail, prison, or other correctional facility until such administrative

17 remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  An inmate must exhaust his

18 administrative remedies irrespective of the forms of relief sought and offered through

19 administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The Supreme Court

20 recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise

21 procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford*

22 *v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds

23 out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting

24 *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

25          This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth

26 two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is

27 fully addressed on the merits by the administrative agency and appealed through all the

28                                  2

1   agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical

2   procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).

3   "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.

4   Defendants must show that Plaintiff failed to meet both the merits and compliance tests to

5   succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

6   The failure to exhaust administrative remedies is treated as a matter in abatement and

7   is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108,

8   1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative

9   remedies is an affirmative defense, and defendants bear the burden of raising and proving

10   failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look

11   beyond the pleadings and decide disputed issues of fact without converting the motion into one

12   for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*,

13   837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing

14   a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim

15   without prejudice." *Id.* at 1120.

16   For prisoners within the NDOC system, exhaustion of administrative remedies requires

17   complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation

18   740 (AR 740). The administrative process consists of: (1) an Informal Level grievance that is

19   reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance

20   appealing the informal grievance decision to the warden at the institution where the inmate is

21   housed; and (3) a Second Level grievance appealing the First Level grievance decision, which

22   is decided by the Assistant Director of Operations. (Defs.' Mot. to Dismiss 2.) If an inmate

23   disagrees with the response to any grievance, he may appeal the grievance to the next available

24   level within the prescribed deadlines. (*Id.* at 3.)

25   **B.   DISCUSSION**

26   Defendants argue that Plaintiff has failed to exhaust his administrative remedies with

27   respect to all claims. (Defs.' Mot. to Dismiss 2.) Defendants assert that Plaintiff concedes that

28                                                                 3

1 he has not exhausted his administrative remedies, warranting dismissal.  (*Id*. at 3.)

2      Plaintiff contends that special circumstances exist that should excuse his failure to

3 exhaust administrative remedies before filing the instant action.  (Pl.'s Opp. to Defs.' Mot. to

4 Dismiss 2 (Doc. #27).)  Specifically, Plaintiff asserts that "it was necessary to file this action as

5 soon as possible in order to have an official record filed to notify the Court and U.S.

6 government of the mistreatment committed by the [defendants]."  (*Id*. at 3.)  Plaintiff argues

7 he should be allowed to amend his complaint now that he has completed administrative

8 exhaustion.  (*Id*. at 5.)

9      First, a prisoner must exhaust administrative remedies "even with respect to suits

10 alleging excessive force by prison officials."  *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056,

11 1061 (9th Cir. 2007)(citing *Porter v. Nussle*, 534 U.S. 516, 520 (2002)).  However, a prisoner's

12 failure to exhaust may be excused if he can demonstrate that the grievance process is

13 unavailable to him because: (1) administrative procedures are unavailable (for example, if he

14 is unable to obtain the requisite forms or if his injuries prevent him from submitting the forms

15 in a timely manner); (2) prison officials obstructed his attempt to exhaust; or (3) prison

16 officials failed to follow procedures for processing grievances.  *Marella v. Terhune*, 562 F.3d

17 983, 985 (9th Cir. 2009), *amended by*, 568 F.3d 1024 (9th Cir. 2009); *see  Viet Mike Ngo v.*

18 *Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008).

19      Plaintiff filed this action on July 22, 2009. (Pl.'s Compl. 1).  Although Plaintiff initiated

20 the prison grievance process on July 15, 2009, he did not complete all levels of review until

21 either August 10, 2009, or October 9, 2009. (Pl.'s Opp. Ex. 1, Ex.2; Pl.'s Second Supplement,

22 Attach. A-1, A-2 (Doc. #33).)  Thus, Plaintiff did not exhaust his administrative remedies before

23 filing suit in this court.  Moreover, Plaintiff has not alleged that the grievance process was

24 unavailable to him based on his inability to access forms or obstruction by prison officials.  In

25 his initial opposition to Defendants' motion, Plaintiff alleged that the NDOC was suspending

26 the disposition of grievance number 2006-28-77690 and had not yet responded.  (Pl.'s Opp.

27 4.)  However, Plaintiff's subsequent filings indicate that prison officials responded to this

28                                                          4

1  grievance on October 9, 2009. (Pl.'s Second Supplement, Attach. A-2.) Therefore, Plaintiff has

2  failed to show that circumstances exist excusing his failure to exhaust administrative remedies

3  prior to filing suit.

4       Second, Plaintiff argues he should be allowed to amend his complaint now that he has

5  completed administrative exhaustion.  (*Id.* at 5.) However, the Ninth Circuit squarely rejected

6  this argument in *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  In

7  joining the Courts of Appeals for the First, Second, Third, Seventh, Tenth, Eleventh, and D.C.

8  circuits, the Ninth Circuit concluded that "[r]equiring dismissal without prejudice when there

9  is no pre-suit exhaustion provides a strong incentive that will further [the] Congressional

10 objectives" behind the enactment of 42. U.S.C. § 1997e(a). *Id.* Permitting a prisoner to exhaust

11 while litigation is pending, on the other hand, undermines those objectives. *Id.* Thus, pursuant

12 to *McKinney*, Plaintiff should not be allowed to amend his complaint; rather, the court should

13 dismiss his complaint without prejudice.

### III. RECOMMENDATION

15 **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

16 **GRANTING** Defendants' Motion to Dismiss (Doc. #11) without prejudice.

17 **IT IS FURTHER RECOMMENDED** that the District Judge enter an Order

18 **DENYING AS MOOT** Plaintiff's Motion for Preliminary Injunction. (Doc. #5.)

19      The parties should be aware of the following:

20      1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

21 Local Rules of Practice, specific written objections to this Report and Recommendation within

22 fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

23 Judge's Report and Recommendation" and should be accompanied by points and authorities

24 for consideration by the District Court.

25 / / /

26 / / /

27 / / /

28                                      5

1        2.      That this Report and Recommendation is not an appealable order and that any

2 notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

3 District Court's judgment.

4        DATED: January 8, 2010.

5

6

7
_____

      UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28